FILED
United States Court of Appeals
Tenth Circuit

February 2, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERIC R. BURKE,

Defendant-Appellant.

No. 10-3030

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 2:06-CR-20128-CM-1)**

William D. Lunn, Jr., William D. Lunn Attorney at Law (G. Gordon Atcheson, The Atcheson Law Firm, Westwood, Kansas, on Opening Brief), Tulsa, Oklahoma, for Appellant.

James A. Brown, Assistant United States Attorney (Lanny D. Welch, United States Attorney, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Appellee.

Before **TYMKOVICH**, **TACHA**, and **BALDOCK**, and Circuit Judges.

**TYMKOVICH**, Circuit Judge.

After police officers discovered firearms and over 1,500 images of pornography—many involving children—at the home of Eric Burke, he pleaded

guilty to several child pornography and firearms charges.  The district court sentenced him to a 168-month sentence.  He now appeals, contending the district court erred in (1) denying his motion to suppress evidence seized at his home because the search warrant and supporting affidavit lacked particularity, and (2) in giving him an excessive sentence in relation to the federal firearm charge.  He also claims the government breached the plea agreement, thus making his sentence invalid.

Having jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM Burke's sentence.

## I.  Facts

In 2006, Eric Burke's wife, Michelle, contacted the Leavenworth County Sheriff's Office and spoke to one of the detectives.  She advised the detective that several days earlier, she had observed a number of compact discs lying on top of clothing in an overnight bag that belonged to her husband.  She explained Burke had been out of town the week before and had left the bag open on the floor in a room on the lower level of her house.

Curious about the CDs, Mrs. Burke inserted them into the computer and discovered they contained images of minor girls engaged in various sexual acts.  She also informed the detective her husband was a convicted sex offender and had guns in the home.  She indicated she had waited several days before advising authorities about finding the CDs because she was afraid of how her husband

would react if he found out. She also advised the police Burke might have kept a lap top computer in his truck.

With this information detectives prepared an affidavit and application for a search warrant. The affidavit said, in relevant part to this appeal, that "Michelle Burke . . . told [the detective] that she found child pornography on CD-Roms by the family computer located in her residence." Supp. R., Vol. 1 at 23. The affidavit did not elaborate on the definition of "child pornography." The affidavit did explain Mr. Burke copied the CDs off the computer, is a convicted sexual offender, had guns in the house, and had told his wife "he would kill anyone who breaks up his family again." *Id.*

Based on the affidavit, a magistrate judge issued a search warrant. Relying on the warrant, officers searched Burke's home and truck for computer and other media relating to child pornography, as well as firearms. They discovered and seized a loaded .30-30 caliber Winchester rifle, a box of .30-30 ammunition, a .22 caliber Remington rifle, an Essex Arms pistol frame, as well as a great deal of electronic media, including Burke's computers. A forensics examiner later found on the CD-Roms some 1,155 images of pornography, many of which constituted child pornography. Further, a review of the home computer established it had been used to access possible child pornography websites. Several of the recovered images were identified as known victims at the National Center for Missing and Exploited Children.

After his arrest, and consistent with a written plea agreement with the United States, Burke pleaded guilty to violating 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography) and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Felon in Possession of Firearms). As part of that agreement, Burke waived the right to appeal most issues related to his conviction and sentence, except his claim regarding suppression of evidence and the district court's denial of his motion to dismiss the firearms charge.

The district court sentenced Burke to 168 months in prison and a 5-year term of supervised release. Burke challenged the sentence, claiming (1) the search warrant was too general and thus violated the Fourth Amendment's prohibition against general searches, and (2) the government breached the plea agreement because the agreement's factual recitation noted Burke had 155 images of pornography but the government provided the court evidence of 1,155 images at sentencing (contending the 155 number in the plea agreement was merely a typographical error), increasing the length of Burke's sentence.

Having lost on both arguments below, Burke now appeals, raising several issues.

## II. Discussion

Burke raises four issues on appeal, two relating to the suppression of evidence and two relating to the propriety of his sentence.

## A. Suppression of Evidence

Burke argues the district court erred in two ways in denying his motion to suppress. *First*, he contends the detective's affidavit was inadequate to provide the magistrate with probable cause to issue the search warrant. This argument was not raised in the district court *Second*, in an argument he pursued unsuccessfully below, he claims the search warrant was too general and did not sufficiently limit the search of his home to those items showing his use of child pornography. As we explain below, neither has merit.

### 1. Adequacy of Affidavits

Burke contends the affidavits provided to the magistrate judge lack sufficient detail to support probable cause. For example, he posits that because the affidavit merely says his wife found "child pornography," instead of providing specific descriptions of the images she saw, it is too general to support probable cause. But none of these arguments was presented to the district court at the suppression hearing, and they are therefore waived on appeal.

Federal Rule of Criminal Procedure 12(e) provides, "A party waives any Rule 12(b)(3) defense, objection, or request [which includes motions to suppress evidence] not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." We have held under this provision, "When a motion to suppress evidence is raised for the first time on appeal, we must decline review." *United States v. Brooks*, 438 F.3d 1231, 1240 (10th Cir. 2006); *see also*

*United States v. Buchanan*, 985 F.2d 1372, 1380 (8th Cir. 1993) (holding defendants must raise a motion to suppress before trial or the objection is deemed to be waived).

We have also held "this waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion." *United States v. Dewitt,* 946 F.2d 1497, 1502 (10th Cir. 1991); *see United States v. Banks*, 451 F.3d 721, 727 (10th Cir. 2006) (explaining the general rule that if a party fails to raise a specific argument in a suppression hearing they waive that argument on appeal); *see also United States v. Ros*e, 538 F.3d 175, 185 (3d Cir. 2008) ("Under Federal Rule of Criminal Procedure 12, a federal criminal defendant is barred, absent good cause, from raising a reason to suppress evidence for the first time on appeal. This conclusion finds support in the Criminal Rules' text, their history, our Court's case law, and the policy underlying Rule 12."); *United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir. 2006) ("We have also held that failure to raise *specific issues or arguments* in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.").

Burke filed a timely pretrial motion to suppress evidence, and the district court held an evidentiary hearing before denying the motion. The briefs and the oral arguments at the hearing focused exclusively on whether the *warrant* lacked sufficient particularity to guide the police in their search of Burke's property. At

no time did Burke argue the *affidavit* was insufficient to provide the magistrate with probable cause. That contention appears for the first time on appeal, and we thus consider it waived.

We recognize Rule 12(e) provides "a 'single narrow exception to the waiver rule.'" *United States v. Hamilton*, 587 F.3d 1199, 1215–16 (10th Cir. 2009) (quoting *United States v. Santos Batista*, 239 F.3d 16, 19 (1st Cir. 2001)). The rule provides, "For good cause, the court may grant relief from the waiver." FED. R. CRIM. P. 12(e). In applying Rule 12 at the appellate level, we have noted that "a party's failure to raise a specific argument in a suppression hearing results in waiver on appeal *unless* the party is able to show cause why it failed to raise the argument below." *Hamilton*, 587 F.3d at 1216 (quotations omitted) (emphasis added). We rarely, however, grant relief under the good-cause exception. *Id.*; *see also United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir. 1997) (finding lack of good cause where "[t]he record shows that sufficient information was available to defense counsel before trial that would have enabled him to frame his suppression motion to include the execution of the search warrant").

Burke has made no effort to "demonstrate [good] cause for his failure to raise the issue." *Dewitt*, 946 F.2d at 1502. He made no showing of cause in his opening brief, and he failed to do so again in his reply brief despite the government's raising the waiver issue in its response. Furthermore, our own review of the record revealed "no impediment to [Burke's] ability to raise the

issue." *Id.* Accordingly, we conclude Burke has waived appellate review of his suppression arguments vis-a-vis the sufficiency of the affidavits.

We recognize that, based on Federal Rule of Criminal Procedure 52(b)'s general provision for plain error review, we have "[i]n several cases . . . engaged in plain-error review even after a defendant has failed to make a motion to suppress evidence prior to trial." *Brooks*, 438 F.3d at 1240 n.4. Burke requests we do so again in his case. To the extent these prior cases have created confusion in this area, we clarify and hold that Rule 12, and not Rule 52, applies to pretrial suppression motions and a suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent a showing of good cause for why it was not raised before the trial court.[1] This holding applies not only where the

_____

[1] Our review of Tenth Circuit case law indicates the confusion arose from several cases applying plain error review after a suppression motion has been waived. Those cases, while few in number, conflate Rule 52 with Rule 12. In *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988), for example, we stated that we would consider only those arguments made before the trial court unless plain error resulted in manifest injustice. We did so, however, relying on an earlier Tenth Circuit opinion to which Rule 12 did not apply. *See United States v. Taylor*, 800 F.2d 1012, 1017 (10th Cir. 1986) (applying Rule 52). The *Orr* opinion moreover did not address Rule 12's waiver provision, suggesting neither the parties nor the court considered Rule 12 should apply instead of Rule 52.

Relying on *Orr*, several of our later cases, though not definitively requiring an application of plain error review when a defendant has waived a motion to suppress, have nonetheless conducted plain error review after noting the defendant had waived the issue. *See Dewitt*, 946 F.2d at 1502 (engaging in a lengthy Rule 12 waiver analysis, then stating in just one sentence there was no plain error in the district court's rulings); *United States v. Meraz-Peru*, 24 F.3d
(continued...)

defendant failed to file a suppression motion at all in the district court, but also where the motion filed lacked the specific issues raised on appeal.

As we noted in our survey of the case law in *Hamilton*, several other circuits "have strongly questioned the correctness of" engaging in plain error review after a defendant has failed to raise a suppression motion prior to trial. 587 F.3d at 1216 n.9. *See Rose*, 538 F.3d at 182–83; *United States v. Chavez-Valencia*, 116 F.3d 127 (5th Cir. 1997); *United States v. Wright*, 215 F.3d 1020 (9th Cir. 2000). Those decisions' reasoning, which we agree with, relies on both the plain text of the Rules of Criminal Procedure and policy considerations.

When read alone, both Rule 52(b) and Rule 12 appear applicable to pretrial suppression motions. When considered together, however, Rule 12's waiver provision must prevail:

> The latter is much more specific than is Rule 52(b); while Rule 52(b) states generally that "[a] plain error that affects substantial rights

---

[1](...continued)
1197, 1198 (10th Cir. 1994) (holding Rule 12 waiver, then noting previous cases have gone on to find an absence of plain error after determining Rule 12 waiver). These cases, it seems, recognized Rule 12's operation but nonetheless acknowledged *Orr*'s invocation of plain error review.

Most of our cases, however, and especially our most recent ones, have simply applied Rule 12 in its proper context and have not applied plain error review when a defendant raises a suppression argument for the first time on appeal. *See, e.g., Brooks*, 438 F.3d at 1239–40; *United States v. White*, 584 F.3d 935, 948–49 (10th Cir. 2009) (refusing to hear an argument raised for the first time on appeal); *Hamilton*, 587 F.3d at 1213–1216 (invoking Rule 12 waiver but noting Tenth Circuit case law has on occasion applied plain error review).

> may be considered even though it was not brought to the court's attention," Rule 12(e) singles out motions to suppress, stating that a "party *waives* any [suppression] defense, objection, or request not raised by the [pretrial] deadline the court sets." (Emphasis added.) In this context, "we apply the well-settled maxim that specific statutory provisions prevail over more general provisions." *Chavarria v. Gonzalez*, 446 F.3d 508, 517 (3d Cir. 2006) (internal quotation marks omitted). Thus we avoid "applying a general provision when doing so would undermine limitations created by a more specific provision." *Varity Corp. v. Howe*, 516 U.S. 489, 511, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996).

*Rose*, 538 F.3d at 182–83. Thus, under the plain text of the rules, Rule 12's absolute waiver controls.

In support of this reasoning, our cases suggest "a number of policy reasons for requiring defendants to move to suppress evidence prior to trial and for deeming their failure to do so to be a waiver." *Hamilton*, 587 F.3d at 1214 (quotations omitted). First, "because the exclusionary rule was crafted more to benefit society at large by deterring overzealous police conduct than to personally benefit defendants, 'the exclusionary rule should be used sparingly in instances where its deterrent effect on police violations is minimal (as with appellate review for plain error).'" *Id.* (quoting *Brooks*, 438 F.3d at 1240). Furthermore, in most circumstances "fairness concerns" militate in favor of a waiver rule because "'although the government can appeal an adverse ruling on a suppression motion prior to trial, it cannot do so once jeopardy has attached.'" *Id.* (quoting *Brooks*, 438 F.3d at 1240); *see also Rose*, 538 F.3d at 183 (citing *Chavez-Valencia*, 116 F.3d at 132). Moreover, if "a defendant has not raised a suppression issue before

-10-

the district court, the Government (under an assumption that its proffered evidence was admissible) may plausibly conclude during trial that it does not need to accumulate and introduce additional evidence to prevail." *Rose*, 538 F.3d at 183. Finally, allowing a defendant to challenge the inclusion of evidence on appeal places the government in the difficult position of "defending itself based on a potentially meager record." *Brooks*, 438 F.3d at 1240.

We recognize our cases have sent a mixed message, to say the least. For example, in *United States v. Jones*, 530 F.3d 1292, 1298 n.1 (10th Cir. 2008), we used a footnote to highlight the confusion, and then applied plain error review in a challenge to joinder. In other cases, we have applied plain error review, either invoking it while calling its application into question, or simply imposing waiver without even mentioning plain error. *See, e.g.*, *Hamilton*, 587 F.3d at 1212–14; *Dewitt*, 946 F.2d at 1502. While some of those cases could be seen as controlling, we are convinced none of them are. We take the opportunity with this case to resolve explicitly the tension between Rule 52(b) and Rule 12 where suppression motions are concerned. No previous case explicitly addresses and resolves the issue and thus no previous case has provided a clear rule for subsequent courts and litigants to follow.

Another reason for the confusion lies in the fact that in the Rule 52(b) context, the Supreme Court defined "waiver" in a way that makes Rule 12's use of the term necessarily inconsistent with Rule 52(b). *United States v. Olano*, 507

U.S. 725, 733 (1993). *Olano* defined "waiver" as the "intentional relinquishment or abandonment of a known right," which results in a complete bar. *Id.* Under *Olano* an inadvertent "failure to make the timely assertion of a right" is not a waiver but a forfeiture, which results in plain error review. *Id.* Thus, regardless of how we interpret and apply Rule 12, an inconsistency regarding the definition of "waiver" will arise. If we interpret Rule 12 to allow for plain error review, then the term "waives" under Rule 12 will not mean what it means under *Olano* (i.e., a complete bar). On the other hand, if we interpret Rule 12's waiver as a complete bar for noncompliance, regardless of whether that noncompliance was intentional, then the term "waives" under Rule 12 will include some acts that under *Olano* would only be an unintentional forfeiture.

Although we recognize the conundrum *Olano* and the rules have placed on us, we still think our reading of Rule 12 is appropriate:

> Rule 12's history . . . indicates that its text means what it says. As previously noted, in 1974 the Rules were changed to require—with an explicit threat of waiver—that motions to suppress be raised prior to trial in accordance with the district court's desired timetable. In 2002, well after *Olano*, the waiver provision of section (f) was moved to section (e) and its text was revised, but the Advisory Committee kept the term "waiver" in place. *See* FED. R. CRIM. P. 12 advisory committee's note to 2002 amendments. Had the drafters thought that term outdated in light of *Olano* or other precedent, they could have changed the term to "forfeiture," but they did not.

*Rose*, 538 F.3d at 183. We agree with the Third Circuit's reasoning. There has been ample opportunity to change the language of Rule 12(e) since *Olano*.

Congress and the Supreme Court have not done so, and it is not our place to do it now.  Moreover, the Supreme Court itself seems to recognize there are instances where "waiver" will not meet the definition *Olano* gave it in the Rule 52(b) context.  For example, in *Gonzales v. United States*, 553 U.S. 242 (2008), the Court recognized defendants could waive certain rights (i.e., what arguments to pursue, what evidentiary objections to raise, and what stipulations to make regarding the admission of evidence) without doing so knowingly and voluntarily. *Id.* at 248–49.  Even *Olano* itself stated, "[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."  507 U.S. at 733.

In any event, Rule 12 itself provides a safety valve for counsel's inadvertent failure to raise an argument at the suppression hearing.  The "good cause" exception protects against a miscarriage of justice as capably as plain error review.

Accordingly, we hold Rule 12's waiver provision, not Rule 52(b)'s plain error provision, governs motions to suppress evidence, including specific arguments to suppress evidence, raised for the first time on appeal.  Such motions

and arguments are waived absent a showing of good cause for why they were not raised below.[2]

We therefore refuse to consider Burke's affidavit argument, even under a plain error analysis.[3]

### 2. Generality of the Search Warrant

Burke next contends, as he did before the trial court, that the warrant issued to allow the search of his home did not properly limit the scope of the search and thus violated the Fourth Amendment. He argues that because the warrant did not confine the search to those computer files containing pornography, it amounted to a general warrant prohibited by the Constitution. We review "[d]eterminations relating to the sufficiency of a search warrant . . . de novo." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009).

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to

---

[2] This opinion has been circulated to all active members of this court, and it is our unanimous decision that Rule 12(e)'s waiver requirement precludes plain error review on appeal.

[3] Despite this conclusion, as the government conceded at oral argument, this affidavit was unnecessarily vague. We encourage law enforcement officers in the future to draft affidavits in such a way that will avoid appeals such as this one.

be searched, and the persons or things to be seized."  This particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Our case law requires that "warrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material."  *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).   The ability of computers "to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."  *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009).

We emphasize that "practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched."  *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) (citations omitted).  "A warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement."  *Otero*, 563 F.3d at 1132.  But it should enable "'the searcher to reasonably ascertain and identify the things authorized to be seized.'"  *Riccardi*, 405 F.3d at 862 (quoting *United States v. Carey*, 172 F.3d 1268, 1271 (10th Cir. 1999)).

After listing the crimes officers suspected Burke of committing—violation of federal firearms laws and sexual exploitation of a child—the warrant called for officers to search for and seize the following as "contraband, evidence, fruits, or instrumentalities of said crime(s)":

> [1] Personal computer specifically a Hewlett Packard, additional computers and hard drives to include the contents within the above listed truck. Any and all types of media storage related to the storage of information of computer files to include: Floppy discs, compact discs, flash drives, external media, etc.
> [2] Firearms ammunition and items related to firearms possession.
> [3] Due to the nature of the charges any and all items related to child pornography in any media form, photos, magazines and . . . video/compact discs shall be seized by searching officers as contraband.

Supp. R., Vol. 1 at 19.

In arguing the warrant lacks particularity, Burke contends that because the warrant did not confine the search to computer files containing pornography, it was too general. For several reasons, Burke's arguments are unpersuasive.

First, we agree with the district court that the warrant was sufficiently particular. The third paragraph begins with "due to the nature of the charges," and the charge listed on the warrant is the sexual exploitation of a child followed by a statutory reference, a charge "narrow enough to meet the fourth amendment's requirement" by bringing to officers' attention the purpose of the search. *United States v. Leary*, 846 F.2d 592, 601 (10th Cir. 1988) ("[S]ome federal statutes may be narrow enough to meet the fourth amendment's requirement [while others]

-16-

cover a broad range of activity and the reference to those statutes does not sufficiently limit the scope of the warrant."). Also, the third paragraph emphasizes officers are to seize "any and all items related to child pornography in any media form." That clause again notifies officers as to why they are searching for the items listed in paragraph 1. A sufficient nexus between the child pornography charge and the items to be searched existed to allow the warrant to pass constitutional muster.[4]

Burke counters this conclusion by pointing to *United States v. Carey*, 172 F.3d 1268, 1271–72 (10th Cir. 1999), where we held officers may not expand the scope of a search beyond its original justification. But *Carey* does not support Burke's argument. There, the original warrant authorized a search of a computer for evidence of illegal drug sales. *Id.* at 1270. Upon searching the computer, officers found evidence of possession of child pornography and began searching the computer for those images, not for evidence of illegal drug sales. *Id.* at 1271. We held officers needed another warrant to search for the child pornography evidence because those images were beyond the scope of the original warrant. *Id.* at 1271, 73–74. We later clarified *Carey* stands for the "proposition that law

---

[4] We emphasize that while we find the warrant in this case meets constitutional muster, the government can do better. We are confident an increase in particularity and detail will help avoid appeals like this one. Despite our conclusion on the facts of this case, we encourage law enforcement officers in the future to help the issuing court produce a warrant that obviates the flaws identified in this case.

enforcement may not expand the scope of a search beyond its original justification." *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006). Burke's case is not one in which officers seized his computer in hopes of finding evidence of one type of crime, then searched for evidence of other crimes. Rather, the warrant directs officers to search for evidence related to the crime listed, which was sexual exploitation of a child. That is precisely the kind of evidence officers searched for and found on Burke's computer and CD-Roms.

The government also contends Burke's argument regarding the particularity of the warrants is moot. As far as we can tell, the government's argument appears to be that because Burke is challenging the particularity of the warrant with regards to "computer" files, his argument is moot because the evidence at issue in this case was seized from CD-Roms, not from a computer. The government misses the thrust of Burke's argument, which is that the warrants are not particular enough to limit the scope of the officers' search for digital evidence to only those files containing child pornography. That argument applies to any form of digital storage, whether CD-Roms, hard drives, memory sticks, etc. While we reject Burke's contention in this case, we recognize the validity of his concerns. *See* Orin S. Kerr, *Search Warrants in an Era of Digital Evidence*, 75 MISS L.J. 85 (2005) (discussing the difference between searches for physical evidence and those for digital evidence and advocating for the rules to require one warrant for

the search and seizure of physical evidence such as computers and a separate warrant for the search of particular files on those computers).

Given the above, we agree with the district court that the warrant was sufficiently particularized to overcome the Fourth Amendment's bar on general searches.

## B.  Sentencing

Burke also provides two reasons why the district court erred at sentencing. First, he avers the government breached the plea agreement when at sentencing it produced evidence he had over 600 images of child pornography in his home. Second, he contends the district court erred in deviating from the guidelines without explanation on his gun charge.  We disagree.

### 1.  *The Plea Agreement*

Burke first argues the government breached the plea agreement by taking the position at sentencing that his offense level should be based on the 1,155 images discovered on his CD-Roms.  He contends that because the factual recitation in the plea agreement noted the forensic examiner had discovered only 155 images of child pornography, the government could not provide evidence of 1,155 images at sentencing without breaching the agreement.  That breach, he argues, resulted in the trial judge sentencing him to 168 months instead of 121 months.  He also argues the district court erred in giving the 168-month sentence on the alternative ground that the additional images not referenced in the plea

-19-

agreement were relevant conduct under the United States Sentencing Guidelines (USSG) and could be factored into the sentence. Because we find the government did not breach the plea agreement, we do not address Burke's contentions regarding whether the additional images constituted relevant conduct.[5]

We review de novo a "claim that the government has breached a plea agreement." *United States v. Rodriguez-Delma*, 456 F.3d 1246, 1250 (10th Cir. 2006). To determine whether a breach has occurred, we "1) examine the nature of the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *Id.* (quotations omitted). "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003). And when the government breaches a plea agreement, "[a] defendant . . . is entitled to a remedy that restores the meaningfulness of his bargain." *United States v. VanDam*, 493 F.3d 1194, 1203 (10th Cir. 2007).

---

[5] We nonetheless point out that the relevant conduct provision of the plea agreement does not prohibit the district court from applying the Guidelines' relevant conduct provision, USSG 1B1.3, in its entirety. The plea agreement tells the parties that the district court may consider conduct charged in dismissed counts and uncharged related criminal activity, in addition to whatever else USSG 1B1.3 includes in its definition of relevant conduct.

Turning to the express language of the plea agreement, the government made three promises in return for Burke's guilty plea: (1) "To not file any additional charges against the defendant arising out of the facts forming the basis for the present indictment"; (2) "To recommend a sentence at the low end of the applicable guideline range"; and (3) "To recommend the defendant receive a two . . . level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility." R., Vol. 1, Doc. 78 at 5. The agreement further provides that "defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence the defendant will receive." *Id.* at 7.

The agreement also explicitly states that "[d]efendant understands and agrees . . . there shall be no . . . restriction on the use of the information: (1) previously known to the United States; (2) revealed to the United States by, or discoverable through, an independent source." *Id.* The plea agreement imposes a duty upon the United States to "provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning the background, character, and conduct of the defendant *including the entirety of the defendant's criminal activities. Id.* at 10 (emphasis added). Finally, the United States reserved in paragraph 16 of the agreement "its right to make any

recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement." *Id.*

Nor does the plea agreement in any way bind the United States to the factual recitation. To the contrary, the agreement provides the United States could use any information it already had or could discover through an independent source, which would include the number of images. It also expressly imposes a duty on the government to provide the court with whatever information it deemed relevant. The agreement further unambiguously provides that the court, not the government, would determine Burke's sentence. By informing the court of the accurate number of pornographic images, the government adhered to this portion of the agreement. Notably, the larger number of images was set forth in the pre-sentence report and Burke chose not to register any objection prior to sentencing. *See* FED. R. CRIM. P. 32(f) (providing the procedure for objecting to pre-sentence reports).

Burke points to two cases he contends demonstrate the government is bound by the quantity set forth in the factual recitation of the plea agreement. *See United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996); *United States v. Boatner*, 966 F.2d 1575, 1578–79 (11th Cir. 1992). In both of those cases, however, the government explicitly stipulated to an agreed fact for purposes of the cases, including sentencing—the contested drug quantities or a specific term of imprisonment. We have nothing comparable here.

-22-

The government's only contractual obligations to Burke at sentencing were to recommend a sentence at the low end of the applicable range determined by the court, to refrain from adding additional charges, and to recommend a reduction for acceptance of responsibility. This the government did.[6] It had no other obligations to Burke under the agreement and thus complied with its end of the contractual bargain.

While we recognize we must construe ambiguous terms against the government, we see no ambiguity in this plea agreement. We find support for our conclusion in *United States v. Rodriguez-Rivera*, 518 F.3d 1208 (10th Cir. 2008), where under similar circumstances and a similarly worded plea agreement we reached the same conclusion. *Id.* at 1212–14 (holding the government did not breach its agreement when the factual recitation noted a lower quantity of drugs than what the government advocated for in the pre-sentence report). Burke was free to strike a deal with the government to advocate a specific number of images at sentencing, but nothing in this agreement comes close to accomplishing that goal.

Accordingly, we conclude the government did not breach the plea agreement.

---

[6] The government did try to argue against the two-level reduction because it believed Burke had violated promises he had made in the plea agreement. The trial court denied the government's motion, and neither party appeals that decision.

## 2.  *The Gun Charge Sentence*

Burke contends the district court erred, both procedurally and substantively, in sentencing Burke on the gun count.  Because we concluded the government did not breach the plea agreement, we also find Burke has explicitly waived this argument pursuant to paragraph 13 of the plea agreement, which reads,

> Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release), except with regards to the suppression issue . . . and the court's denial of the motion to dismiss the firearm charge. . . . By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court.

R., Vol. 1, Doc. 78 at 9.

When determining whether a plea agreement is enforceable, we employ the analysis set forth in *United States v. Hahn*, 359 F.3d 1315, 1325–28 (10th Cir. 2004).  That analysis requires a determination of whether (1) the disputed appeal falls within the scope of the waiver of appellate rights, (2) the defendant knowingly and voluntarily waived his appellate rights, and (3) enforcing the waiver would result in a miscarriage of justice.  *Id.*

The explicit waiver encompasses any appeal related to any matter in this case except for Burke's suppression claim and his motion to dismiss the gun

-24-

charge. Moreover, the sentence was within the guideline range determined appropriate by the court. Thus, Burke's claim regarding the validity of his sentence is clearly within the scope of the waiver.

"The second prong of the analysis requires the court to ascertain whether the defendant knowingly and voluntarily waived his appellate rights." *Id.* at 1325. We do this by first examining "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." *Id.* (citing *United States v. Elliott*, 264 F.3d 1171, 1174 n.1 (10th Cir. 2001)). That is clearly the case here. We look second for an adequate Rule 11 colloquy. *Id.; see also* FED. R. CRIM. P. 11. During the plea colloquy, Burke affirmed his understanding of the appellate waiver of his sentence, and we are satisfied the colloquy was sufficient.

Finally, the third prong of our "enforcement analysis requires the court to determine whether enforcing the waiver will result in a miscarriage of justice." *Hahn*, 359 F.3d at 1327. "[E]nforcement of an appellate waiver does not result in a miscarriage of justice unless" (1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *Id.* (citing *Elliott*, 264 F.3d at 1173). After a thorough review of the record we do not find, and Burke does not argue, any of the above situations occurred.

Because we find the plea agreement valid, we conclude Burke has waived his right to appeal the gun charge sentence, and we therefore do not address his arguments.

## III. Conclusion

For the foregoing reasons, we AFFIRM Burke's sentence and the district court's denial of his motion to suppress evidence.