**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

DENNIS AUGUSTINE,

      Defendant – Appellant.

No. 12-3269

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 5:12-CR-40006-RDR-3)**

---

Ann Marie Taliaferro of Brown Bradshaw & Moffat, LLP, Salt Lake City, Utah, for Defendant–Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff–Appellee.

---

Before **LUCERO, McKAY,** and **MATHESON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant Dennis Augustine was convicted on two counts of conspiracy to distribute methamphetamine. Prior to trial, he filed two separate motions to suppress evidence. The first motion was to quash a warrant to search Defendant's

residence and to suppress evidence found in that search which led directly to his arrest. The second motion was to suppress Defendant's statements to law enforcement officials after his arrest. The district court issued a memorandum and order denying both motions. It denied the motion to quash and suppress evidence found in the search of Defendant's residence by applying the good-faith exception to the exclusionary rule, declining to reach a determination regarding whether probable cause existed to search the residence. The district court denied the motion to suppress Defendant's statements based on its factual findings regarding the circumstances of Defendant's interrogation. After the subsequent trial, the jury found Defendant guilty on both counts of conspiracy. On appeal, we consider the denial of both motions, starting with the motion relating to the search of Defendant's residence.

In appealing the denial of his motion regarding the search of his residence, Defendant challenges the district court's application of the good-faith exception to the exclusionary rule and renews his claim that the affidavit supporting the search warrant was insufficient to show probable cause to search his residence. The following evidence was submitted in the affidavit to the state court judge who issued the warrant.

In November 2011, the Salina/Saline County Drug Task Force began conducting an investigation into drug trafficking activity in Saline County, Kansas. The investigation identified an individual named Kevin Ashcraft as a

-2-

distributor of methamphetamine in the county. A wire tap on Mr. Ashcraft's telephone allowed investigators to determine that another individual named Lisandro Clara-Fernandez was Mr. Ashcraft's supplier.

A "pen register/telephone ping order" was subsequently acquired for a telephone number being used by Mr. Clara-Fernandez. (Appellant's Opening Br., App. C at 8 (capitalization standardized).) With this order, investigators began "pinging" Mr. Clara-Fernandez's telephone to track his geographical location. (*Id.* at 8-9 (capitalization standardized).) Through a combination of physical surveillance and telephone pinging, investigators established that, in addition to meeting with Mr. Ashcraft, Mr. Clara-Fernandez had parked his car outside a residence at 904 North Tenth Street on two different occasions—once in front of the residence, and a second time behind the residence where investigators witnessed Mr. Clara-Fernandez conversing with an unidentified white male.

Eventually, investigators arranged for surveillance of a drug transaction between Mr. Ashcraft and Mr. Clara-Fernandez. Upon witnessing the transaction, law enforcement officials arrested Mr. Ashcraft and Mr. Clara-Fernandez. When asked during an interview subsequent to his arrest whether he knew of anyone else in Salina whom Mr. Clara-Fernandez would be supplying with drugs, Mr. Ashcraft replied, "Dennis Augustine on North Tenth Street." (*Id*. at 13 (capitalization standardized).) Mr. Ashcraft further stated he and Defendant had a mutual acquaintance who had introduced them to Mr. Clara-Fernandez. When

asked if Mr. Clara-Fernandez had any reason to visit Defendant's residence, Mr. Ashcraft answered, "Just to drop off to him." (*Id.*) A subsequent computer check for 904 North Tenth Street indicated Defendant had active water service at that address.

The affidavit also included information concerning Defendant's criminal history, particularly mentioning Defendant was previously convicted for a drug-related crime in the 1990s. Additionally, it included information regarding the training and experience in drug investigations of the affiant, who was a lieutenant in the Salina Police Department. Finally, the affidavit included statements regarding the affiant's knowledge of certain behaviors common among drug dealers, including their tendency to secrete contraband, proceeds of drug sales and records of their transactions within their residences, and their tendency to possess paraphernalia used in weighing and packaging controlled substances.

"In reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the government and upholds the district court's factual findings unless clearly erroneous." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). However, "[d]eterminations relating to the sufficiency of a search warrant and the applicability of the good-faith exception are conclusions of law . . . which this court reviews *de novo*." *Id.* Because the district court did not make a decision regarding whether probable cause existed to search Defendant's residence, we begin, like the district court, with the question

of the applicability of the good-faith exception to the exclusionary rule.

Under the good-faith exception to the exclusionary rule, "[i]f a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Campbell*, 603 F.3d 1218, 1225 (10th Cir. 2010) (internal quotation marks omitted). An executing officer is generally presumed to be acting in good-faith reliance upon a warrant. *Id.* at 1230. However, this presumption is not absolute. There are four situations in which the presumption of good faith and, consequently, the good-faith exception to the exclusionary rule do not apply: (1) when "the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his 'reckless disregard of the truth'"; (2) when the "'issuing magistrate wholly abandon[s her] judicial role'"; (3) when "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; and (4) when "a warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *Danhauer*, 229 F.3d at 1007 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)) (alteration in original). Here, Defendant argues the good-faith exception to the exclusionary rule does not apply to the execution of the warrant to search Defendant's residence because "the affidavit in support of the warrant [was] 'so lacking in

-5-

indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923).

"[G]ood faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established." *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005). An officer's reliance on a warrant is not reasonable when the underlying documents are "devoid of factual support." *Campbell*, 603 F.3d at 1230. However, the "minimal nexus requirement does not require that hard evidence or personal knowledge of illegal activity link a Defendant's suspected unlawful activity to his home." *Id.* at 1231 (internal quotation marks omitted). "On the contrary, an affidavit establishes a sufficient nexus when it describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (internal quotations marks omitted). In this case, we cannot agree with Defendant that the affidavit was so lacking in indicia of probable cause and so devoid of factual support as to prevent application of the good-faith exception to the exclusionary rule. Indeed, the affidavit readily satisfies the minimal nexus requirement.

The information in the affidavit indicated Defendant was receiving drugs from Mr. Clara-Fernandez, whose asserted status as a drug supplier was corroborated by information in the affidavit. The information linking Defendant to Mr. Clara-Fernandez came from Mr. Ashcraft, a known informant, who could

be held accountable if his allegations against Defendant proved to be untrue. *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (stating that when the identities of informants are known, their "reputation[s] can be assessed and [they] can be held responsible if [their] allegations turn out to be fabricated").  Mr. Ashcraft made statements against his own penal interest by admitting to drug transactions beyond those of which law enforcement had knowledge, thereby further bolstering his credibility.  *See United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002) (indicating that an informant's credibility was enhanced because "his statements were against penal interest").  Furthermore, the affidavit showed that relevant details provided by Mr. Ashcraft were corroborated by the police.  For instance, the affidavit demonstrated that police corroborated Mr. Ashcraft's claim that Defendant lived on North Tenth Street.  The affidavit also showed that police observed Mr. Clara-Fernandez at Defendant's residence on two separate occasions.  *See id.*  (stating that an informant's credibility was established when "his statements were against his penal interest and . . . the police were able to corroborate some of the information he provided").  These factors support the veracity of Mr. Ashcraft's information and thereby strengthen the basis for the affidavit's conclusions.  In addition to Mr. Ashcraft's statements, the affidavit included the statement of a veteran law enforcement officer that persons involved in the drug trade often secrete contraband and evidence of drug transactions in their homes.  *See United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009)

(stating "it [is] merely common sense that a drug supplier will keep evidence of his crimes at his home").

Taking this information from the affidavit into account, we hold that the affidavit described circumstances that would warrant a person of reasonable caution in the belief that drugs, drug records, or drug paraphernalia would be found in Defendant's residence and established a minimal nexus between Defendant's residence and the drug-related items being sought in the warrant. Since a minimal nexus existed, the good-faith exception to the exclusionary rule was properly applied by the district court.[1]

We turn then to Defendant's appeal of the denial of his motion to suppress his statements to law enforcement officers. Defendant's argument on this point is based on the claim that his waiver of his *Miranda* rights was not knowingly, intentionally, and voluntarily made. *See Miranda v. Arizona* 384 U.S. 436, 444

---

[1] Defendant also argued, for the first time on appeal, that the lieutenant providing the affidavit "made material omissions in applying for th[e] warrant and in doing so, misled the magistrate." (Appellant's Opening Br. at 53.) Additionally, Defendant argued that we should review his trial attorney's failure to raise this "material omissions" issue before the district court as ineffective assistance of counsel. (*Id.* at 56-57.) However, Defendant subsequently abandoned both of these arguments in his reply brief, acknowledging that the record contained insufficient facts concerning whether the lieutenant acted knowingly or recklessly in allegedly omitting material information from his affidavit and that this paucity of facts precluded appellate review. (Appellant's Reply Br. at 23-24.) Defendant further acknowledged that the "'material omissions' issues must be further developed and are more appropriate for review in collateral proceedings under 28 U.S.C. §2255." (*Id.* at 24.)

(1966).

After being apprised of his *Miranda* rights, Defendant agreed to submit to an interview by two law enforcement officials without an attorney. At the outset of the interview, Defendant told the interrogating officers he was not under the influence of alcohol or drugs. In the course of the interview, he acknowledged that he did take a number of prescription medications—namely, Buspar, Clonazepam, Zoloft, and occasionally Xanax. Throughout the interview, Defendant sporadically indicated a desire to take his prescription medications; however, he never indicated to the interrogating officers that he could not, or would not, continue the interview without his medication.

During the interview, Defendant made a number of inculpatory admissions. He acknowledged that Mr. Clara-Fernandez had supplied him with drugs about two dozen times. He further acknowledged that Mr. Clara-Fernandez often "fronted" him methamphetamine for which he would pay later. (Tr. of Video-Recorded Interview, R. Supplemental Vol. 2 at 33-34.) He also stated the average amount of methamphetamine he received from Mr. Clara-Fernandez on these occasions was a half-pound. Defendant further stated he had previously been provided with drugs by Mr. Ashcraft, who supplied him with a couple of ounces of methamphetamine every few days for about eight months. Additionally, he confessed to having about a half-dozen customers to whom he sold the drugs he received.

Defendant now claims his ability to properly waive his *Miranda* rights was impaired because he was under the influence of controlled substances during the interview. Defendant makes this claim despite having explicitly told the officers during the interview he was not currently under the influence of drugs or alcohol. Defendant also claims he was further impaired by his need for his prescription drugs. Defendant thus argues his illicit drug use combined with his need for his prescription drugs rendered his waiver of his *Miranda* rights invalid.

"In reviewing a district court's order granting or denying a motion to suppress, this court accepts the district court's factual findings unless clearly erroneous and considers the evidence in the light most favorable to the district court's determination." *United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002). However, "[t]he ultimate question of whether a statement was voluntary is a question of law reviewed de novo." *United States v. Hernandez*, 93 F.3d 1493, 1501 (10th Cir. 1996). Employing this standard of review, we affirm the district court's denial of Defendant's motion to suppress statements made in his post-arrest interview.

"In determining whether a waiver of rights was knowing and intelligent, we employ a totality of the circumstances approach." *United States v. Burson*, 531 F.3d 1254, 1256-57 (10th Cir. 2008). "The mere fact of drug or alcohol use will not suffice" to overcome evidence showing that the defendant "was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning

-10-

them." *Id.* at 1258 "[A] defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Id.*; *see also United States v. Curtis*, 344 F.3d 1057, 1065-67 (10th Cir. 2003) (finding a valid waiver where the defendant was allegedly under the influence of marijuana, crack cocaine, and alcohol); *United States v. Morris*, 287 F.3d 985, 988-89 (10th Cir. 2002) (holding that a defendant knowingly and intelligently waived his *Miranda* rights while recovering from gunshot wounds in the hospital, despite his argument that his mental capacity was affected by pain, the effects of pain medication, and the post-traumatic stress associated with being shot multiple times in the back)).

After considering a video recording of Defendant's interrogation and the testimonies of the interrogating officers, the district court found that Defendant appeared sober in the recording of the interview and that any alleged "presence of drugs in [D]efendant's system" did not render Defendant "unaware of the nature of his rights and the consequences of his decision to speak with the police." *United States v. Augustine*, 2012 WL 1655170, at * 2 (D. Kan. May 10, 2012) (unpublished decision). The district court also found that "[w]hile defendant may have been more comfortable with his medication," the absence of his medication did not cause Defendant "to proceed involuntarily or in ignorance of the consequences of his actions and statements." *Id.* The district court therefore denied Defendant's motion to suppress.

-11-

Nothing in the record persuades us that the district court's factual finding that Defendant was "in control of his faculties and his conduct" throughout the interview, *id.*, was clearly erroneous. After reviewing the video recording of the interview and other materials in the record, we agree with the district court's determination that Defendant was not so impaired that his waiver of his *Miranda* rights was invalid.

Defendant also argues, for the first time on appeal, that his waiver of his rights was otherwise involuntary because it was coerced by threats and promises of leniency from his interrogators. We hold that Defendant waived this claim by failing to raise it before the district court. *See* Fed. R. Crim. P. 12(b)(3)(C) and 12(e). This circuit applies the waiver rule articulated in Fed. R. Crim. P. 12(e)[2] "not only when a defendant fails to file any pretrial motion to suppress, but also when a defendant fails to assert a particular argument in a pretrial suppression motion that he did file." *United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009). We hold that Defendant failed to "make . . . definite, specific, detailed and nonconjectural factual allegations" regarding alleged coercive threats and promises from his interrogators and therefore waived this argument. *Id.* at 949 (internal quotation marks omitted).

---

[2] Fed. R. Crim. P. 12(b)(3)(C) requires that a party raise a motion to suppress before trial. If a party fails to do so, it "waives any Rule 12(b)(3) defense, objection, or request." Fed. R. Crim. P. 12(e); *see also United States v. White*, 584 F.3d 935, 948 (10th Cir. 2009).

In an attempt to avoid this holding, Defendant sought to invoke, in his reply brief, the narrow good-cause exception to Rule 12(e)'s waiver rule. *See* Fed. R. Crim. P. 12(e) ("For good cause, the court may grant relief from the waiver."). "We rarely, however, grant relief under the good-cause exception." *United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011). We see no merit in Defendant's argument that good cause exists to excuse his counsel's failure to raise the issue of coercive police tactics because the district court obliquely considered it when the government raised the issue. Neither do we see merit in Defendant's argument that his counsel's failure to raise the issue before the district court, whether as a result of inadvertence or ineffective assistance, is good cause to allow the issue to be heard on appeal. In support of this argument, Defendant cites dicta in our opinion in *Burke*, in which the good-cause exception to Rule 12(e)'s waiver rule is described in passing as "a safety valve for counsel's inadvertent failure to raise an argument at the suppression hearing." *Id.* at 992. However, we do not read *Burke* as expanding the good-cause exception such that it swallows the waiver rule articulated in Fed. R. Crim. P. 12(e), as it would if good cause warranting relief from waiver existed every time a defendant's attorney inadvertently failed to raise a suppression argument. *See Burke*, 633 F.3d at 988 (citing with approval the Fourth Circuit's holding in *United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir. 1997) that good cause did not exist where "[t]he record shows that sufficient information was available to defense counsel

before trial that would have enabled him to frame his suppression motion to include the execution of the search warrant"). Our holding in *Burke* did not rely on the apparent reasoning in the dicta cited by Defendant, and now that the issue is squarely before us, we expressly hold that counsel's inadvertent failure to raise a suppression argument before the district court does not in itself constitute good cause warranting relief from a Rule 12(e) waiver. Furthermore, our review of the record reveals "no impediment to the defendant's ability to [have] raise[d] the issue" prior to appeal. *United States v. Hamilton*, 587 F.3d 1199, 1216 (10th Cir. 2009); *see also Burke*, 633 F.3d at 988. We therefore hold that the good-cause exception to Rule 12(e)'s waiver rule does not apply to Defendant's case.

Finally, Defendant requests that insofar as he failed to preserve his argument that coercive police tactics rendered his inculpatory statements involuntary, this court should nevertheless review the claim for ineffective assistance of counsel. We decline to do so. "[T]his court . . . consider[s] ineffective assistance of counsel claims on direct appeal . . . only where the issue was raised before and ruled upon by the district court *and* a sufficient factual record exists." *United States v. Flood*, 635 F.3d 1255, 1260 (10th Cir. 2011) (italics in original). Defendant's claim does not qualify under these prerequisites.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order denying Defendant's motions to suppress.