FILED
United States Court of Appeals
Tenth Circuit

October 23, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER SCOTT PULSIFER,

Defendant - Appellant.

No. 13-5145
(D.C. No. 4:13-CR-00098-GKF-1)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **PHILLIPS** and **McHUGH**, Circuit Judges.

Defendant Christopher Scott Pulsifer was convicted of possession of marijuana

with intent to distribute and possession of a firearm in furtherance of a drug felony after a

search of his home pursuant to a search warrant revealed approximately eleven pounds of

hydroponic marijuana, eight firearms, and other evidence related to drug distribution and

use. Before trial, Mr. Pulsifer unsuccessfully moved to suppress this evidence, arguing

that the search warrant was overbroad because it authorized a search for evidence related

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to marijuana use and distribution, but the underlying affidavit established probable cause to search only for evidence of marijuana use.

Exercising jurisdiction under 28 U.S.C. § 1291, we hold that even if the warrant was not supported by probable cause to search for evidence of marijuana distribution, the good faith exception to the exclusionary rule applies. We therefore affirm the district court's decision on this basis.

## I. BACKGROUND

### A. *Factual History*

The Tulsa Police Department received an anonymous tip from its WeTIP crime hotline, indicating that Mr. Pulsifer was selling marijuana from a house in Tulsa, Oklahoma. The tipster provided a physical description of Mr. Pulsifer, reported heavy traffic in and out of the house all day and night, and indicated that Mr. Pulsifer kept large amounts of cash in his home, owned several cars, and was "flashy" with his money.

In investigating the tip, Corporal Mike Griffin checked police records for the address provided by the tipster, verified that Mr. Pulsifer was associated with that address, and confirmed that Mr. Pulsifer generally matched the description given by the tipster. Corporal Griffin also checked the City of Tulsa utility records and learned that Mr. Pulsifer was listed as the party responsible to pay the utilities for the house. And police records revealed that on one occasion in 2007, law enforcement officers confiscated a package addressed to Mr. Pulsifer, which when opened, contained approximately 30 grams of marijuana.

Corporal Griffin next conducted surveillance on Mr. Pulsifer's house over approximately a three-week period, during which he observed a Ford F-150 registered to Mr. Pulsifer parked in the driveway of the house. Contrary to the tipster's information, Corporal Griffin did not discover any other vehicles registered to Mr. Pulsifer or observe any traffic consistent with drug distribution at the house. But a trash pull from the curbside of the house revealed a small amount of loose marijuana at the bottom of the trash bag.

Based on his investigation, Corporal Griffin prepared an affidavit in support of a warrant to search Mr. Pulsifer's house for evidence consistent with the use and distribution of marijuana, which accurately described the information provided by the tipster and Corporal Griffin's subsequent investigation. A Tulsa County judge, acting as a neutral magistrate, issued the warrant, which authorized a search for and seizure of items relevant to marijuana use and distribution, including pipes, bongs, rolling papers, scales, safes, plastic baggies, financial records in physical, digital or electronic form, cellular phones, U.S. currency, and firearms.

Upon execution of the search warrant, Corporal Griffin and other officers discovered and confiscated approximately eleven pounds of hydroponic marijuana, eight firearms, ammunition, a safe, digital scales, a money counter, and $12,000 in cash. The government charged Mr. Pulsifer with possession of marijuana with intent to distribute and possession of a firearm in furtherance of a drug felony.

## B. *Procedural History*

Mr. Pulsifer filed a motion to suppress in the district court. Although he conceded that Corporal Griffin's affidavit established probable cause to search for evidence related to marijuana use, he argued it did not provide probable cause to search for evidence related to marijuana distribution. Accordingly, Mr. Pulsifer claimed the search warrant was overbroad, and he urged the district court to exclude all evidence recovered from the house.

The government first argued that Corporal Griffin's affidavit established probable cause to search for evidence related to the distribution of marijuana. In the alternative, the government asserted the warrant should be upheld because even if probable cause was lacking to search for evidence of marijuana distribution, these invalid portions could be severed from the valid portions of the warrant related to marijuana use, which the government claimed made up the greater part of the warrant. *See United States v. Sells*, 463 F.3d 1148, 1153 (10th Cir. 2006). The government also argued that any evidence recovered from the search of Mr. Pulsifer's house was admissible even if the warrant was invalid because the warrant had been issued by a neutral magistrate and the officers who executed it relied upon it in good faith.

After an evidentiary hearing, the district court concluded there was probable cause to search for evidence of both marijuana use and distribution. It also agreed with the government that even if the warrant was overbroad, the invalid portions of the warrant related to marijuana distribution could be severed from the valid portions related to

-4-

marijuana use, and the portions related to marijuana use made up the greater part of the warrant. Because the marijuana, firearms, and other evidence related to drug distribution were in plain view while the officers were executing the valid portions of the warrant, the district court concluded all the evidence was admissible.

After the district court denied the motion to suppress, Mr. Pulsifer pled guilty to the drug charges. After trial on the firearms charge, the jury found him guilty. Mr. Pulsifer now appeals the district court's denial of his motion to suppress.

## II.    DISCUSSION

Mr. Pulsifer seeks suppression of the evidence seized from his house, reasserting on appeal that Corporal Griffin's affidavit fails to establish probable cause to search for evidence related to marijuana distribution, and that the portions of the warrant related to evidence of marijuana distribution cannot be severed from the valid portions related to evidence of marijuana use. He also claims the good faith exception to the exclusionary rule is inapplicable because the search warrant is facially overbroad in that it allows a search for items related solely to marijuana distribution and for which probable cause was clearly lacking.

Exercising our discretion, we limit our analysis to whether the good faith exception applies to the instant case without first addressing the underlying probable cause or severance issues. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) ("Appellate courts have discretion to address probable cause or to proceed directly to good faith."); *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000)

(addressing an underlying Fourth Amendment question where resolution of the issue was "necessary to guide future action by law enforcement officers and magistrates" (internal quotation marks omitted)). We conclude it does, and therefore we affirm the district court's denial of Mr. Pulsifer's motion to suppress.

"Under the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir.), *cert. denied*, 134 S. Ct. 2155 (2014) (internal quotation marks and brackets omitted); *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1234 (10th Cir. 2009) ("We will not reverse the district court's decision to deny suppression of the evidence obtained during a search if the officers who executed the warrant relied upon it in good faith."). When officers rely on a warrant, we presume they acted in objective good faith. *Augustine*, 742 F.3d at 1262; s*ee Messerschmidt v. Millender*, ___ U.S. ___, 132 S. Ct. 1235, 1245 (2012) ("[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." (internal quotation marks omitted)). "However, this presumption is not absolute." *Augustine*, 742 F.3d at 1262.

There are four situations in which an officer's reliance on a warrant is not reasonable:

(1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandon[s his or her] judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*Id.* (internal quotation marks and brackets omitted); *accord Messerschmidt*, 132 S. Ct. at 1245 (recognizing that the "shield of immunity" conferred by the warrant will be lost where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (internal quotation marks omitted)). Mr. Pulsifer claims no reasonable officer could have believed the scope of the warrant was supported by probable cause because the affidavit here is so lacking in indicia of probable cause that he was engaged in marijuana distribution that official belief that probable cause existed was entirely unreasonable. We are not convinced.

The Supreme Court has made clear that the occasions on which these exceptions to good faith may apply will be rare and the threshold for establishing that an officer acted in bad faith is high. *See Messerschmidt*, 132 S. Ct. at 1245, 1250. This is so because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (internal quotation marks, alterations, and brackets omitted); *see Malley v. Briggs*, 475 U.S. 335,

346 n.9 (1986) ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination." (internal quotation marks and citation omitted)). Thus, "police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant." *United States v. Tuter*, 240 F.3d 1292, 1300 (10th Cir. 2001) (internal quotation marks omitted). As the Supreme Court explained, "The question [therefore] is not whether the magistrate erred in believing there was sufficient probable cause to support the scope of the warrant he [or she] issued. It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt*, 132 S. Ct. at 1250.

Under the present facts, it was not unreasonable for Corporal Griffin and the other officers executing the search warrant to rely on the magistrate's decision to issue a warrant to search for evidence of both use and distribution of marijuana. Rather than being "devoid of factual support," Corporal Griffin's affidavit contained allegations made by the anonymous tipster that Mr. Pulsifer was distributing marijuana from his house, and Corporal Griffin confirmed that Mr. Pulsifer matched the description given by the tipster and lived at the house described. In addition, Corporal Griffin's investigation revealed that in 2007 someone sent Mr. Pulsifer 30 grams of marijuana. And significantly, Corporal Griffin confirmed recent illegal activity in the house by conducting a trash pull which revealed a small quantity of marijuana. "Whether any of these facts, standing alone or taken together, actually establish probable cause [to search for evidence of marijuana

distribution] is a question we need not decide." *Messerschmidt*, 132 S. Ct. at 1249. But the affidavit is not so lacking in indicia of probable cause of marijuana distribution that it was objectively unreasonable for Corporal Griffin and his team to rely on the magistrate's determination that such probable cause existed. *See Messerschmidt*, 132 S. Ct. at 1246–47 (concluding that officers' reliance on a warrant to search for "all firearms and firearm-related materials" as well as gang-related materials was reasonable where the affidavit set forth that the suspect was a known gang member who had fired a sawed-off shotgun at a victim, irrespective of whether these allegations actually established probable cause for the full scope of the search); *Tuter*, 240 F.3d at 1297–98 (search warrant was not supported by probable cause where a tip was minimally corroborated by only innocent, readily observable facts, but concluding that the evidence seized need not be suppressed because of the good faith exception); *Danhauer*, 229 F.3d at 1007 (applying the good faith exception where probable cause was lacking because although an affidavit contained no evidence establishing the informant's reliability or basis of knowledge, the officer attempted to corroborate the informant's tip and the affidavit contained more than mere conclusory statements based on the informant's allegations).

Moreover, any defect in the search warrant would not have been obvious from the face of the warrant. *Cf. Cassady v. Goering*, 567 F.3d 628, 635–36 (10th Cir. 2009) (concluding that reliance on a warrant was unreasonable where it was overbroad in every respect, contained no limitation on the scope of the search, and allowed a search for "all other evidence of criminal activity"). Rather, any "arguable defect" would have become

apparent to a reasonable officer only upon a close comparison of the supporting affidavit to the terms of the warrant to ascertain whether the affidavit established probable cause to search for evidence of marijuana distribution in addition to evidence of marijuana use. It would also require a "close parsing" of the warrant application to determine which items sought to be searched and seized were relevant only to marijuana use as opposed to distribution. *See Messerschmidt*, 132 S. Ct. at 1250 (holding that a warrant was not "so obviously defective that no reasonable officer could have believed it was valid" where revealing any defect would require "close parsing" of the warrant application).

Under these circumstances, we cannot conclude the affidavit was so obviously lacking in indicia of probable cause that no reasonable officer could have believed the scope of the warrant was valid. Therefore, the evidence seized from Mr. Pulsifer's home was properly admitted under the good faith exception to the exclusionary rule, even if the warrant was overbroad.

## III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision to deny Mr. Pulsifer's motion to suppress.

ENTERED FOR THE COURT

Carolyn B. McHugh
Circuit Judge

-10-