**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 6, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ERIC LAMONT WILLIAMS,

    Defendant - Appellant.

No. 23-7071
(D.C. No. 6:22-CR-00066-RAW-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **KELLY**, and **MORITZ**, Circuit Judges.

Eric Lamont Williams was a passenger in a vehicle stopped by Oklahoma State

Highway Patrol Trooper Clint Craft for following too closely. After issuing the

driver a traffic warning, Trooper Craft and two other officers searched the vehicle

and found marijuana and approximately 10 pounds of methamphetamine.

Mr. Williams was charged with possession of methamphetamine with the

intent to distribute. Before trial, Mr. Williams moved to suppress the evidence from

the search based on a lack of probable cause. The district court denied his motion,

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

concluding that the totality of the circumstances provided probable cause for the search. Mr. Williams entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.

On appeal, Mr. Williams argues for the first time that the warrantless search of the vehicle was unreasonable because the search incident to arrest exception clarified in *Arizona v. Gant*, 556 U.S. 332 (2009), did not apply. Aplt. Br. at 13-18. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual History*

Trooper Craft stopped a Toyota Rav4 for following another vehicle too closely. As he walked toward the car, he noticed a dog in the rear cargo area and the smell of marijuana. He identified the driver and Mr. Williams as the car's two occupants and observed they both appeared nervous. Mr. Williams informed Trooper Craft that he had rented the Toyota and produced the rental agreement. Trooper Craft advised the driver he would receive a warning for the traffic violation and asked him to sit in his patrol car. Mr. Williams remained in the passenger seat.

Once the driver and Trooper Craft were in the patrol car, Trooper Craft ran a registration check and driver's license inquiry on the driver and began a conversation about the driver's travel plans while filling out the traffic warning. The driver explained he had been in Dallas, Texas, for the past week and that he and Mr. Williams were headed to Pine Bluff, Arkansas. Trooper Craft observed the driver appeared nervous when talking about travel plans but was more comfortable talking about general topics.

2

After speaking with the driver, Trooper Craft reviewed the rental agreement, which showed the Toyota had been rented in Los Angeles, California, four days before the traffic stop. Trooper Craft then returned to the vehicle and requested Mr. Williams's identification, which he provided. Mr. Williams told Trooper Craft that he and the driver were coming from Los Angeles and traveling to Pine Bluff. Trooper Craft noted Mr. Williams appeared extremely nervous. Trooper Craft then returned to the patrol car and ran a warrant check on Mr. Williams. Neither Mr. Williams nor the driver had outstanding warrants, but Mr. Williams did have an extensive criminal history involving drug offenses.

After running these checks, Trooper Craft issued the driver a traffic warning and returned his documents. Trooper Craft said, "All right, man. Be careful." Amended ROA, Vol. IV at 41. As the driver was getting out of the patrol car, Trooper Craft asked if he could ask the driver more questions before he left. The driver cooperated. When Trooper Craft told the driver he smelled marijuana in the car, the driver denied having marijuana but explained that he had tobacco cigars. Trooper Craft informed the driver that he was going to search the vehicle and patted the driver down for officer safety.

Trooper Craft then approached the Toyota, asked Mr. Williams to step out, and patted him down. He told Mr. Williams that he smelled marijuana in the vehicle, and Mr. Williams responded that the driver had marijuana. Trooper Craft then directed Mr. Williams to the backseat of the patrol car.

With both the driver and Mr. Williams in the patrol car, Trooper Craft searched the Toyota with two other officers who had arrived at the scene. Trooper Craft found a

3

paper sack on the floor behind the passenger seat containing suspected marijuana cigarettes and two packages of suspected marijuana. Trooper Craft also searched the rear cargo area and observed the dog had urinated several times. The other officers searched under the hood, where they found a backpack containing four vacuum-sealed bundles of crystal-like substance weighing approximately 10 pounds. Field tests later confirmed the cigarettes were marijuana and the crystal-like substance was methamphetamine.

After conducting the search, Trooper Craft placed both Mr. Williams and the driver under arrest and explained to them their *Miranda* rights, which they stated they understood.

## B. *Procedural History*

A grand jury indicted Mr. Williams for possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

### 1. **Mr. Williams's Motion to Suppress**

Mr. Williams filed a motion to suppress, arguing that "Trooper Craft violated [his] Fourth Amendment rights by executing an unlawful search and seizure without probable cause." ROA, Vol. I at 15.

### 2. **The Suppression Hearing**

A magistrate judge conducted a suppression hearing. At the hearing, Trooper Craft testified he believed that he had probable cause to search the Toyota at the beginning of the traffic stop when he first smelled marijuana. Because he could smell

marijuana, Trooper Craft considered the possibility that Mr. Williams and the driver "were trafficking marijuana across the interstate," and he "planned on searching the vehicle." Amended ROA, Vol. IV at 19. Trooper Craft further testified he did not immediately search the vehicle so that he could try "to build a case" and "to see if there's any more involved with" the smell of marijuana other than personal use with a valid medical marijuana card. *Id.* at 51. In addition to the smell of marijuana, Trooper Craft testified that Mr. Williams's and the driver's extreme nervousness, the discrepancies in their travel plans, and the dog in the back all contributed to why he searched the Toyota.[1]

On cross-examination, Trooper Craft testified that, although he had returned the driver's documents and stated, "All right, man. Be careful," he had not released the driver from his custody and the driver was not free to leave. *Id.* at 41-43. On recross-examination, Trooper Craft explained that, although he felt he had probable cause to search the vehicle at the outset, he did not *Mirandize* Mr. Williams or the driver until he arrested them after the search. *Id.* at 61.

Defense counsel said in closing arguments that, although "Trooper Craft testified that [the driver] wasn't actually allowed to leave," the magistrate judge should use "context clues and the common sense of a conversation" to conclude that the driver was allowed to leave. *Id.* at 69. He further argued:

> [I]f he wasn't allowed to leave, if he was, in fact, detained then everything said -- if Officer Craft did, in fact, have probable

---

[1] Although Trooper Craft explained that drug traffickers use animals to mask drug odor, Amended ROA, Vol. IV at 26, he admitted not smelling the dog's urine until after commencing the search, *id.* at 60.

> cause from walking up to that car that there was raw marijuana and he knew what he was going to do on first walking up to that car, then everything, I believe, needs to be excluded because they were never Mirandized. Every statement that they made should be excluded because there [was] no Miranda, and he testified that he did not Mirandize them.

*Id.* at 70.

### 3. The Magistrate Judge's Findings and Recommendation

The magistrate judge recommended that the district court deny Mr. Williams's motion to suppress. He concluded Trooper Craft had probable cause to search the vehicle based on his "first hand detection of the smell of marijuana." ROA, Vol. I at 46.

### 4. Mr. Williams's Objections

Mr. Williams filed written objections to the magistrate judge's findings and recommendation ("F&R"). Mr. Williams argued, among other things, that if Trooper Craft smelled marijuana and intended to search the vehicle from the beginning of the stop, then he was detained and should have been given a *Miranda* warning before the search.

### 5. The District Court's Order

The district court adopted the magistrate judge's F&R. It held the officers were not required to read Mr. Williams his *Miranda* rights before the search because he "was not yet detained for purposes of *Miranda*." *Id.* at 111. The court concluded the totality of the circumstances provided probable cause for the vehicle search, overruled Mr. Williams's objections, and denied his motion to suppress.

6. **Mr. Williams's Conditional Plea, Sentence, and Appeal**

Mr. Williams pled guilty under a conditional plea agreement, reserving his right to appeal the denial of his motion to suppress. The district court accepted the plea and sentenced Mr. Williams to 210 months in prison. Mr. Williams timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment." *United States v. Leon*, 80 F.4th 1160, 1164 (10th Cir. 2023) (quotations omitted).

### B. *Legal Background*

#### 1. **Fourth Amendment**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "[W]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014) (quoting *Vernonia Sch. Dist. 47J v. Acton*,

515 U.S. 646, 653 (1995)).  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Id.*

a.  *Automobile exception*

"Under the automobile exception to the Fourth Amendment's warrant requirement, police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."  *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (quotations omitted); *see also Collins v. Virginia*, 584 U.S. 586, 592 (2018) ("[O]fficers may search an automobile without having obtained a warrant so long as they have probable cause to do so.").

"An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause."  *Phillips*, 71 F.4th at 823 (quoting *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000)); *see also United States v. Johnson*, 630 F.3d 970, 974 (10th Cir. 2010) ("[T]he odor of marijuana by itself is sufficient to establish probable cause.").

b.  *Search incident to arrest exception*

Under the search incident to arrest exception, arresting officers are allowed to "search the person of the accused when legally arrested."  *United States v. Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019) (quoting *Weeks v. United States*, 232 U.S. 383, 392 (1914)); *see also Riley*, 573 U.S. at 382-85 (noting that, since *Weeks*, the right to search a legally arrested person is a well-accepted exception to the warrant requirement).

In *Arizona v. Gant*, the Supreme Court recognized only two permissible searches of a vehicle incident to the arrest of a recent vehicle occupant:  (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; and (2) "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  556 U.S. at 343 (quotations omitted); *United States v. Pinder*, 121 F.4th 1367, 1371 (10th Cir. 2024) (quoting *Gant*, 556 U.S. at 343).

## 2.  Rule 12 Waiver and Good Cause

Under Federal Rule of Criminal Procedure 12, "[a] suppression argument raised for the first time on appeal is waived (i.e., completely barred) absent a showing of good cause for why it was not raised before the trial court."  *United States v. Lowe*, 117 F.4th 1253, 1259 n.1 (10th Cir. 2024) (quoting *United States v. Burke*, 633 F.3d 984, 988 (10th Cir. 2011)); *United States v. Anderson*, 62 F.4th 1260, 1265 (10th Cir. 2023); *see also* Fed. R. Crim. P. 12(c)(3).

The "good cause" exception is "narrow" and rarely satisfied.  *Burke*, 633 F.3d at 988 (quotations omitted).  The good cause necessary to avoid waiver must show why the defendant "failed to raise the argument below."  *Id.* (quotations omitted).  There is no good cause when there is "no impediment to the defendant's ability to [have] raise[d] [a suppression] issue" before appeal, and "counsel's inadvertent failure to raise a suppression argument before the district court does not in itself constitute good cause warranting relief from a Rule 12[] waiver."  *United States v. Augustine*, 742 F.3d 1258, 1266 (10th Cir. 2014); *see also Burke*, 633 F.3d at 988 (citing with approval the Fourth Circuit's ruling that good cause was lacking when

9

the "record show[ed] that sufficient information was available to defense counsel before trial that would have enabled him to frame his [argument for] suppression" (quoting *United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir. 1997))).

## C.  *Analysis*

In denying Mr. Williams's motion to suppress, the district court concluded there was probable cause to search the vehicle without a warrant.  On appeal, Mr. Williams does not challenge probable cause.  He instead argues for the first time that the warrantless search was unreasonable because he was detained at the time of the search and the search incident to arrest exception clarified in *Gant* did not apply.  Aplt. Br. at 13-18.  Mr. Williams contends *Gant* permits vehicle searches incident to arrest only when there is a concern for officer safety or to preserve evidence related to arrest.  *Id.* at 13-14. He asserts neither applies here because (1) Mr. Williams was unarmed and could not have entered the vehicle while detained in the patrol car, and (2) Trooper Craft "could not have reasonably believed that a total search of the vehicle would produce additional evidence relating to the traffic offense he stopped them for."  *Id.*  Because Mr. Williams failed to make this argument before the district court, he must show good cause to avoid waiver.  *See Anderson*, 62 F.4th at 1265.

Mr. Williams argues he could not raise this issue below because its factual basis —that the driver was never free to leave—did not arise until Trooper Craft testified at the suppression hearing.  Aplt. Reply Br. at 1-2.  This "[a]dditional evidence," Mr. Williams

contends, establishes the good cause necessary to avoid waiver.[2]  *Id.* at 1.  Mr. Williams

says this came as a surprise because the Government indicated before the suppression

hearing that the driver and Mr. Williams were free to leave after Trooper Craft's initial

questioning.  *Id.* at 1-2.

Mr. Williams has failed to show good cause.  Even if Trooper Craft's testimony

provided a new factual basis to argue that the officers needed a warrant to search the

vehicle because Mr. Williams was "detained,"[3] Mr. Williams does not explain why

he did not make this argument at any point during or after the suppression hearing.

*See United States v. Vance*, 893 F.3d 763, 770 (10th Cir. 2018) (finding no good

cause after the Government altered its position at a suppression hearing because the

defendant "never objected at the suppression hearing, asked for a continuance, or

filed a supplemental suppression motion" between "the conclusion of the suppression

hearing and the issuance of the district court's order denying suppression" and did

not file a motion for reconsideration).

---

[2] At oral argument, Mr. Williams's counsel said he had good cause due to the time constraints of making suppression arguments, preparing for trial, and negotiating a plea deal.  *See* Oral Arg. at 05:06-05:14.  Because he raised this argument for the first time at oral argument, we do not consider it.  *See Good v. Dep't of Educ.*, 121 F.4th 772, 821 (10th Cir. 2024); *United States v. Anthony*, 22 F.4th 943, 952 (10th Cir. 2022).

[3] Mr. Williams's counsel also said for the first time at oral argument that he "believe[d] [Mr. Williams and the driver] were under arrest" when the vehicle was searched.  Oral Arg. at 05:54-06:01.  We do not consider this argument either.  *See Anthony*, 22 F.4th at 952.  In any event, Mr. Williams conceded in his briefs that he was only detained, not arrested, when the officers searched the car.  Aplt. Br. at 17 ("Neither [the driver nor Mr. Williams] were under arrest at the time of the search.").

Indeed, Mr. Williams presented a new *Miranda* argument at the suppression hearing and in his written objections to the district court based on Trooper Craft's testimony that he and the driver were not free to leave and were therefore "detained." Amended ROA, Vol. IV at 70 (suppression hearing); ROA, Vol. I at 95 (written objections). Mr. Williams does not explain why he was able to raise his *Miranda* argument at the suppression hearing and in his objections but not his *Gant* argument based on the same testimony. *See Augustine*, 742 F.3d at 1266 ("[C]ounsel's inadvertent failure to raise a suppression argument before the district court does not in itself constitute good cause warranting relief from a Rule 12[] waiver."). Mr. Williams thus has failed to show good cause. His failure to raise his *Gant* suppression argument before the district court constitutes waiver.[4]

### III. CONCLUSION

We affirm the district court's denial of Mr. Williams's motion to suppress.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[4] The Government contends Mr. Williams's conditional plea agreement also precludes this argument. Aplee. Br. at 16-21. We need not decide this issue because he has waived his *Gant* argument and he does not challenge the district court's finding of probable cause. Similarly, we do not address whether Mr. Williams was required to argue plain error.