FILED
United States Court of Appeals
Tenth Circuit

May 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VERNON EARL COLEMAN,

Defendant-Appellant.

No. 11-2173
(D.C. No. 2:10-CR-02603-WJ-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **GORSUCH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

After he was discovered with over 300 kilograms of marijuana in his tractor-trailer, Vernon Coleman pleaded guilty to federal drug charges. But his guilty plea was conditional. In it, he reserved the right to pursue this appeal, an appeal contesting the district court's decision to deny his motion to suppress evidence of the drugs.

---

[*] After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The relevant facts are straightforward enough. Mr. Coleman drove his truck into the Lordsburg Port of Entry, a New Mexico commercial vehicle inspection center just inside the state's border with Arizona. At Lordsburg, some truckers are waived right through, others are questioned briefly, and still others are required to submit to inspections of varying degrees of intensity. As Mr. Coleman approached the inspection site, Officer Christopher Alvarez instructed him to stop. The officer immediately noticed that Mr. Coleman was "real shaky, real, real nervous," so much so that he asked Mr. Coleman if he was okay. When Officer Alvarez asked where he was coming from, Mr. Coleman replied his fiancee's house. Officer Alvarez thought this was a strange answer because most truckers usually respond with the name of the city where they took on their cargo. Officer Alvarez decided to ask some additional questions. As he did, he noticed Mr. Coleman was consistently avoiding eye contact and remained "shaky."

Eventually, Officer Alvarez said he intended to conduct a "Level II" inspection, which includes a walk around the truck, a review of the driver's logbook, and a cargo and cab check. As he handed over the log book, Mr. Coleman's "hands were shaking uncontrollably." When asked whether he loaded the truck's cargo himself, Mr. Coleman gave inconsistent answers. And the officer soon noticed that the seal on the trailer did not match the seal on the bill of lading, a fact suggesting the truck's cargo might have been tampered with. At

this point, Officer Alvarez sought and received Mr. Coleman's consent to search the trailer. The discovery of the drugs quickly followed.

Before us on appeal, as before the district court, Mr. Coleman argues that Officer Alvarez's decision to submit him to a Level II inspection was racially motivated, a product of animus against African Americans, and a violation of the Equal Protection Clause. As remedy, Mr. Coleman seeks suppression of the drugs from his criminal proceeding. And for evidence of his theory, Mr. Coleman points to and asks us to take judicial notice of statistical evidence presented in two civil cases unrelated to this criminal proceeding. This statistical evidence, he says, shows that at Lordsburg African American truckers are stopped more frequently than white truckers. But the difficulty is, most of the evidence Mr. Coleman cites focuses on the conduct of a different officer, Ben Strain, and the rest is aggregated enforcement data for *all* officers at Lordsburg. So even if true, and even if we were inclined to take judicial notice of them, the statistics are of no help to Mr. Coleman. No help because to prove an Equal Protection claim he "must prove that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) (emphasis in original). And the statistics he asks us to take notice of do not even purport to speak to *that* question, saying nothing one way or the other about the practices of the undisputed decisionmaker in this case, Officer Alvarez. After all, it would be a gross misuse of statistical data to extrapolate about Officer Alvarez's conduct in

particular merely from aggregate data that covers many other individuals. *See Carpenter v. Boeing* Co., 456 F.3d 1183, 1196-97 (10th Cir. 2006) (to be reliable, statistical data must "relate to the proper population" and control for key variables); *Cf. General Elec. v. Joiner*, 522 U.S. 136, 146 (1997) (while "experts commonly extrapolate from existing data" it is a different thing entirely to permit an expert opinion "connected to existing data only by . . . *ipse dixit*").

Alternatively, Mr. Coleman argues that the circumstances of the stop itself are sufficient to give rise to an inference of discriminatory purpose. He points out that the most suspicious facts about his truck (like the fact the seal on the trailer didn't match the bill of lading) didn't emerge until after Officer Alvarez made the decision to conduct a Level II inspection. Mr. Coleman, however, brings his challenge under the Equal Protection Clause, not the Fourth Amendment. And this means he must prove not that Officer Alvarez's asserted basis for the search was *unreasonable*, but that it was *disingenuous* — a pretext for racial discrimination. *See generally Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166-68 (10th Cir. 2003). This he cannot do. The record in this case is entirely devoid of evidence suggesting racial animus and yet filled with evidence that Mr. Coleman was nervous and agitated. So much so that the district court found Officer Alvarez was credible when he testified that he elevated the stop to a Level II inspection because of Mr. Coleman's nervousness, not race. Neither has Mr. Coleman identified any reasoned basis on which we might hold

this finding clearly erroneous, as we must before we may reverse it.  *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1265 (10th Cir. 2006).

Because the district court was correct in holding that Mr. Coleman hasn't shown an Equal Protection violation, we have no need to consider the government's alternative argument that suppression of evidence is an inappropriate remedy even when such a violation is proven.  The judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge